UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
:
J & J SPORTS PRODUCTIONS, INC.,          :
                                          :    **MEMORANDUM**
                           Plaintiff,     :    **DECISION AND ORDER**
                                          :
         - against -                      :    14 Civ. 3476 (BMC)
                                          :
EDDIE T. FREEMAN, d/b/a Sugarland and     :
Eddie T. Freeman,                         :
                                          :
                           Defendant.     :
                                          :
----------------------------------------------------------X

**COGAN,** District Judge.

This case is before the Court on plaintiff's motion for a default judgment as a result of defendants' failure to answer or appear. "Once default has been entered, the allegations of the Complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages." J & J Sports Prods., Inc. v. Bimber, No. 07-CV-590S, 2008 WL 2074083, at *1 (W.D.N.Y. May 14, 2008) (citation omitted).

Plaintiff owns certain distribution rights for a closed-circuit television event known as the "Manny Pacquiao v. Timothy Bradley Boxing Event" (the "Event"). On November 14, 2009, defendant Eddie T. Freeman, individually and d/b/a Sugarland (the "Lounge") stole the signal and exhibited the Event in its commercial establishment for the benefit of itself and its patrons.

The Event was distributed by way of satellite uplink and then retransmitted to cable and satellite distributors. Theft of a signal transmitted in this manner violates the Communications Act of 1934, 47 U.S.C. § 605 (1996). See Int'l Cablevision, Inc. v.

Sykes, 75 F.3d 123 (2d Cir. 1996). Because plaintiff distributed the Event by closed circuit cable television, defendants' theft of the signal also violates §553(a)(1). The Second Circuit has held that when both statutes apply, a plaintiff is entitled to proceed under §605, which has more severe damage provisions. See Int'l Cablevision v. Sykes, 997 F.2d 998 (2d Cir. 1993).

Section 605(e)(3)(C)(i) allows plaintiff the choice of recovering either (I) its actual damages plus the defendant's net profits; or (II) statutory damages. Here, plaintiff's primary request is for statutory damages. The statutory damages consist of an amount awarded in the Court's discretion (i.e., "as the Court considers just"), between $1,000 and $10,000 per violation. In addition to these statutory damages, the Court may award enhanced or exemplary damages of up to $100,000 if the signal was pirated for commercial use. 47 U.S.C. §605(e)(3)(C)(ii). There is no question that the signal at issue here was pirated for commercial purposes; plaintiff's investigator paid a $30.00 cover charge and observed it being shown on television in the Lounge to an audience of at least 107 spectators.

Courts have utilized different approaches to determine where to fix statutory damages within the range of $1,000-$10,000. A number of courts undertake a disgorgement analysis, where they multiply the number of patrons present at the unauthorized event by a presumed ticket price. See, e.g., Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. 107 (E.D.N.Y. 1997); Cablevision Sys. Corp. v. 45 Midland Enters., 858 F. Supp. 42, 45 (S.D.N.Y. 1994). Some courts increase this calculation by presuming the maximum capacity, even if the investigator's report showed that that capacity was not met. See Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, WL

2496062, at *1 (E.D.N.Y. Sept. 20, 2005). Other courts have relied on less tangible considerations, such as how many monitors the defendant used to show the event, whether he collected a cover charge, and whether he advertised the purloined event to attract more business. Some of these courts have also applied a multiplier to some variation of a disgorgement formula. See, e.g., Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc., 146 F. Supp. 2d 955 (E.D. Wis. 2001); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480 (D. Conn. 1993).

The mathematical approach or the consideration of aggravating factors makes sense in a contested matter, where both sides have appeared and all of the facts have been placed before the Court. However, when a defendant has failed to answer legal process and defaulted in a case, the application of such factors may unfairly penalize the plaintiff. Here, for example, it may be the case that defendants locally advertised the stolen event by word of mouth, sandwich board, or pennysaver, if not other means – it seems unlikely that the Event suddenly popped up on the Lounge's screen without notice to past or potential patrons – but we do not know. It may be that defendants are regular thieves of satellite signals and this is just the latest, but not the last, instance, but defendants' default again deprives us of that knowledge. It may even be the case that defendants taped the Event and showed it during a discounted Happy Hour the following night; again, we simply do not know. And while it is reasonable to require a plaintiff to undertake some investigation before bringing this kind of action, as plaintiff here has done, we have to recognize that with statutory damages of $10,000 per violation and defendants who are often insolvent, there is only so much digging that a court can expect a plaintiff to perform.

Thus handicapped by defendants' decision to not only violate the law, but to ignore the process of this Court, this Court believes that the $10,000 statutory maximum should be the presumptive amount awarded in a single violation case absent any indication in the record of mitigating circumstances. To hold otherwise would encourage defendants caught red-handed to ignore legal process in the recognition that judicial discretion is the only defense they have. This Court will not give them that defense at the risk of punishing an innocent plaintiff.

The Court is similarly handicapped in determining the amount of enhanced damages to award. If defendants had appeared, we would examine their financial statements and other financial information, the frequency of their violations, and the extent to which their business depends on this illegal conduct, and then award the minimum amount deemed necessary to ensure that these violations do not recur. In the absence of evidence concerning defendants' finances and conduct, however, the enhanced damages must remain somewhat speculative. The Court is mindful that the speculative nature of the enhanced damages is defendants' fault, and they should not benefit from it. At the same time, it is clear that with a statutory maximum of $100,000, an aggressive award of enhanced damages may drive a small business to close, and that is not the intent of the statute, unless it is a case in which recurrent theft makes the difference between the business being viable or non-viable.

Under these circumstances, the Court holds that enhanced damages of $30,000 are appropriate. The only information about defendants in the record is that the Lounge is in a location in Brooklyn and that it holds upwards of 110 patrons.

In total, forty thousand dollars (statutory plus enhanced damages) should be painful to defendants, but not so painful as to cause undue hardship. If this analysis is incorrect, the defendants may finally choose to emerge into the light of our legal system, as there are procedures for addressing undue hardship, whether in this Court or others.

Finally, the statute provides for a plaintiff's recovery of costs and attorneys' fees, as well as interest. Plaintiff is not seeking attorneys' fees, and its claimed costs of $520 are reasonable. It is entitled to interest, but the Court rejects its request for interest at the state statutory rate of 9%, a number apparently derived from the New York Civil Practice Law and Rules. This is a federal question case and prejudgment interest should accrue at the same rate as post-judgment interest.

Plaintiff's motion is therefore granted. The Clerk is directed to enter judgment in favor of plaintiff and against defendants, jointly and severally, in the amount of $40,000 plus $520, for a total of $40,520, with interest from June 9, 2012.

**SO ORDERED.**

                                                             U.S.D.J.

Dated: Brooklyn, New York
       August 13, 2014